Thank you. Your Honor, I'm Peter Sutter. I represent Adam Fodrey, the appellant in this matter. This matter is a narrow issue. It deals with collateral estoppel and whether or not the prosecution for two city ordinances, unruly gathering and underage drinking, and whether or not the search and seizure motion should prevent Mr. Fodrey from proceeding with his claims against the City of Rialto police officers that are defense in this case. And so it's just a matter of does collateral estoppel apply. Mr. Fodrey conducted a search and seizure motion pursuant to the state penal code 1538.5. He lost that motion. So then the issue is should he be precluded from claiming that officers entering his garage, whether or not that cause of action in the current Second Amendment complaint should be included. That issue in any collateral estoppel, is there an identical issue? Was there a full chance to litigate whether or not the defendant was motivated to litigate the issue in that case? Counsel, what issues would you address in the Section 1983 claim that were not already addressed in the suppression motion? Well, specifically the Superior Court suppression motion, the court repeatedly stated that the court was not interested in the entry into the garage, which is the basis for the civil rights case that's now before the court. I thought that the Superior Court explicitly mentioned the garage in its oral ruling at ER 214. So the court did expressly mention it and said it was irrelevant. There was a portion taken out by counsel. In our pleadings, we mentioned several times where the court is repeatedly saying that there is a difference between the officers entering into the backyard outside and those entering into the home. I have the ruling on the court on page 242, where the court explains its ruling. And on page 242, line 26, the court says, what happened inside the house is not relevant to these two charges. You're not trying to suppress anything from inside the house, to which point the defense attorney, Mr. Glick, corrects the judge and says, in the garage. And the court then says, on the next page 243, the garage itself. The testimony I have, it goes on to talk about the entry of the officers going into the backyard. And so, to be sure, there's two different objects. There's an object in the criminal case and there's an object that we have here. The criminal case, the object was to suppress evidence. The superior court found that there was no evidence to be found in the garage, so therefore it was irrelevant. And we've cited passages where the court is continuously admonishing Mr. Glick that there's nothing to be found there, so therefore it's irrelevant. What the court was concerned about was the officers going into the backyard. And ultimately, the court found that there was sufficient cause to go into the backyard for investigation. But case law talks about a different standard between going into the backyard and going into the actual furnish of the house. And the superior court was correct in this assessment. In looking at the entry into the backyard and eschewing an examination, which it didn't feel was relevant, therefore it didn't get into. If you look at the record, the record is actually devoid of any discussion or detail, either by the court or by the witnesses, of how the officers got into the garage. What was the rationale for going into the garage? Because the court didn't find it relevant, so it was never gotten into. So ultimately, there isn't an identity of issues in this case. Because in a criminal case, the judge was only concerned about what evidence should or should not be suppressed. And the only evidence that was found at the home was that in the backyard. There were no underage persons inside the house or specifically in the garage. And so the court didn't concern itself. Counsel, may I interject a question? Yes, of course. Is the garage within the curtilage of the house? Yes, it's an attached garage. And so therefore, the attached garage is going to have a heightened standard. So if the court found there was probable cause to go into the house, would that mean there's probable cause to go into the garage? If the court did find there was probable cause to go into the house, then yes, there would have been probable cause to go into the garage. But specifically, the court did not find that and took great pains to walk away from that finding and only talked about going into the backyard. And even though they have the garage and the backyard are in the same general inside the main curtility, it carries with it a different analysis. And the court understood that and confined itself to the entry into the backyard only. Thank you. So the other issue too is whether or not Adam Beaudry would have fully and fairly litigated this. The issue that's before the court in this case, which is, was the entry into the garage lawful or unlawful? The Superior Court stayed away from it. This is all what this case is about, whether or not going into Mr. Beaudry's garage and including going into locked cabinets, as explained in the Second Amendment complaint. So those are two different issues. And the second issue, the issue before the court now, just was not litigated. Moreover, at the very best, the court's decision was ambiguous. And to imply collateral estoppel, they have to use some precision. And that was not done. Additionally, there was no reason to appeal because an appeal court was going to naturally state that they were going to separate the issue. So even if we had appealed or even if Mr. Glick had appealed the decision of the Superior Court, the appeals court would have just said, well, you can get from A to B because the only thing being suppressed was the backyard. And there was no reason to appeal that. It would have got us nowhere. And I'd like to reserve about a minute for... All right. I think we have a minute. Thank you, counsel. Mr. Christensen. Good morning. May I please the court? Allen Christensen for the defendants and appellees. First, I'd like to point out that there are no claims on appeal as to the city of Rialto. The city of Rialto was dismissed in the lower court and there are no claims on appeal as against the city. So we're really dealing with the individual officers. I disagree that the lower court didn't make a finding as to the garage. The civil claim that was left by plaintiffs, the remaining civil claim was a Fourth Amendment violation for unlawful entry into the backyard and into the garage. And it appears that on appeal, appellant has abandoned the argument about the unlawful entry into the backyard, which basically is an admission that the 1538-5 suppression motion applies to the civil case. So the argument is that the lower court, the state court, the criminal court, didn't make any findings as it relates to the garage. Well, as the lower court stated and as Mr. Schluter pointed out in his opening brief, the lower court found that Mr. Schluter was cherry picking the record for his purposes. And if you look at page 106 of the record, the court asked, what is it you're trying to suppress? And appellant's counsel says, the evidence that was obtained once they entered into the garage and entered the backyard. It goes on and it's true that the court says over and over there's nothing to suppress, but that's on day one of the hearing. This was a two-day hearing. The first hearing took place on December 29, 2017. The second on August 17, 2018. And if you look at excerpts of record 109 through 110, the court says just for clarification, for the course clarification, your motion is to suppress any statements or conversations with individuals in the garage. Counsel says in the garage and in the backyard. Down at line 28, the court says so far there's nothing for the court to suppress that occurred in the garage. Counsel says, right. The court says, is that correct? Counsel says, so far, yes. The court then says, so then that part is nothing. I don't have to consider that. Counsel then says, well, I may have to call these other officers then or present these other videos so I can show what the other information is. So it's true that on day one, the court said it didn't have anything in the garage to suppress. But on day two, there was testimony from another officer, Carla McCullough, who said she observed minors, persons under 21, minors under the age of 18, drinking alcohol. She made contact with the two birthday girls that were on the flyer who were both under age 21 at the time. They appeared very intoxicated. They walked her. Incidentally, Counsel, we don't have the flyer in the record, but why did it appear from the face of the flyer that a crime was being committed? On the face of the flyer, I don't think there was a crime committed. Although it said, it did say that nitrous oxide would be available, which would be a crime if there is providing nitrous oxide to anyone. There's also indication that alcohol would be served and the two girls, their names were on the flyer. The officers investigated and found that those two girls were both under age, both under age 21. Officer McCullough goes into the backyard and sees the two birthday girls, very intoxicated, and goes to talk to them. They walk into the garage through an open door from the backyard and Officer McCullough follows them in. They have further conversation in the garage. At this point, there is something for the court to consider. And the court does consider it and says that you're trying to suppress, on page 211 of the record, you're trying to suppress all alcohol containers in the backyard and the garage and the statements and observations. I'm sorry, the counsel says that. And the court says officers see these misdemeanors in their presence. They don't need a warrant. That's on 213 and 214. Counsel, if I can just jump in on that. You know, it's an interesting, you know, preclusion is a big thing, meaning you're not getting your day in court. You're being told you've already had your chance and we're not going to hear it again. So it seems to me that in that kind of situation, you really want to make sure your record is crystal clear, obviously. The cases certainly say that. And I agree with you. There seems to be a lot of tension between the first and second hearing. And, you know, at one point, counsel for the criminal defendant says it's only the backyard, but then he says it's the garage. The judge keeps saying, well, there's nothing for me to do in the garage. It's just the backyard. Then he makes a cryptic statement. I think you just read it on page 213. The judge says ER 213. Well, what happened in the house is not relevant to anything. And then the lawyer says, well, the garage on the next page and then 214. And the court says, oh, OK, well, for the garage, you know, there was just I just I mean, is this really sufficiently clear to tell the section 1983 plaintiffs that they just can't have a day in court? Well, your honor, I think it is because the court, Mr. Schluter is the one that's trying to convolute the terms home and garage by saying it's a home garage or something to the effect. What the officers testified to, and that's in the record as well. I don't have the page number right in front of me, but I can find it if necessary, that that they were denied entry into the home itself. They were denied entry into the home and they did not enter the home, but they did enter the garage. So when the court says on page I believe it was 214 that there's nothing to do with the entry into the home, that's correct. The officers were not allowed entry into the home. They went into the garage and Officer McCullough says she saw the two minors intoxicated, followed them into the garage through an open door in the rear and had a discussion with them. In addition, Officer Medina says he came into contact with McCullough in the garage. She was already in there, apparently talking to the two young ladies. So the court is at this point on the second day of hearing, there is testimony to the effect of information to suppress in the garage that wasn't there on the first day of the hearing. That's what Mr. Schluter is kind of convoluted there. The first day of the hearing, the judge says, yeah, I have nothing to suppress. The second day, appellant's counsel gets into what there is to suppress and that's the discussions with the minors, the beer containers or alcohol containers in the garage. Officer McCullough also says that when the police officers entered the backyard, this is on excerpts of Record 178, large amounts of people began filtering out through the side gate, going through the garage, scattering. So she followed these two minors in the garage and at this point, counsel repeatedly is telling the court, I want to suppress the information in the garage. The court agrees at this point on day two and says the motion is denied. As far as the home, the home is a separate issue altogether. They were denied entry into the home multiple times. Even when later paramedics were called to the home to care for appellant's father who was having heart problems, he wouldn't let them in with the paramedics. So they brought him outside. So I don't think there's any confusion with the garage and the home. I don't think there's any confusion with the order of the state criminal court. I believe that in this case, there was sufficient grounds to seek a motion to suppress. There was sufficient grounds for collateral estoppel. And so at this point, I believe that the court is to determine whether or not the lower court abused its discretion, which I think is a higher standard than the de novo review of determining whether or not there was plain preclusion available. Right. Thank you, counsel. Mr. Souter, you had a minute. Yes, Your Honor. Certainly, I'm not trying to confuse anybody. I don't think I have. The Superior Court looked at the garage as a home and the analysis would be different. There was no evidence about any. Well, McCullough said that she took statements after the police entered into the garage and took some statements of the young ladies. There wasn't any evidence of those statements and why they would be suppressed. Suppressible. She just said she talked to him. And as such, that wasn't. There isn't anywhere in the record talks about what inculpatory statements were made by the young ladies. And so the court rightfully just disregarded the garage and that entry and made the analysis, its analysis. That is, the Superior Court made its analysis only to the backyard. The court and additionally, the court was clear that it was disregarding that disregarding the garage. It never undid that clarity. It never made a ruling saying I am incorporating the garage and what I'm not. As Donato said, if you're going to preclude someone from proceeding on a claim, we should be, it should be clear that they should be precluded. If it's not clear, then they should not be precluded. The court back on page 106 was confused by Mr. Glick and said entry into the garage. What exactly is it you're suggesting? And Glick talked about discussions they had with people. The court then said, what exactly are you objecting to? I don't have anything here. They saw in the garage except some middle aged adults. And that was some substance of what was in the garage and it never changed. And the court continues on line 22 on page 106. That's why I'm trying to narrow it down. The entry into the garage then I don't think has any bearing on your motion to suppress because there's nothing in the garage for the courts to suppress. Again, the record is devoid of anything found in the garage that was at issue in the criminal case. If it was in the backyard, that's all I have to say. All right, thank you very much, counsel. Votery versus City of Rialto is submitted and we will take up Martinez v. Saul.
judges: Wardlaw, Gould, Donato